**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA**

In re

**LINDA JOSEPHINE SNYDER,**                                    Case No. **09-61571-13**

Debtor.

*MEMORANDUM OF DECISION*

At Butte in said District this 13th day of November, 2009.

After due notice a hearing was held at Missoula on October 8, 2009, on the motion to

modify stay filed by the Estate of Earl M. Pruyn ("Pruyn") on September 14, 2009, and Debtor's

objection thereto, and on confirmation of Debtor's Chapter 13 Plan (Docket No. 9) which

provides for a cure-by-sale of Debtor's residence at 1532 and 1532 ½ Dickinson Street,

Missoula, Montana[1], payment of allowed secured claims on or before August 11, 2011, and

objections thereto filed by Pruyn and the Chapter 13 Trustee.  The parties appeared represented

by counsel.  Testimony of witnesses was heard and exhibits were admitted.  The Court took

judicial notice of the Schedules.  At the conclusion of the parties' cases-in-chief the Court

granted the parties time to file simultaneous briefs, which have been filed and reviewed by the

---

[1] The legal description of Debtor's residence is a portion of the NE1/4 of Section 14, Township 13 North, Range 19 West, Principal Meridian, Montana, more particularly described as Parcel 2 of COS 5692.

1

Court together with the record and applicable law.  These matters are ready for decision.  For the reasons set forth below a separate Order shall be entered denying Pruyn's motion to modify stay, denying confirmation of Debtor's Chapter 13 Plan and granting Debtor time to file an amended Plan in accordance with her concessions made at the hearing.

This Court has exclusive jurisdiction in this Chapter 13 case under 28 U.S.C. § 1334(a).  Pruyn's motion to modify stay is a core proceeding under 28 U.S.C. § 157(b)(2)(G), and confirmation of Debtor's Plan is a core proceeding under 28 U.S.C. § 157(b)(2)(L).  This Memorandum of Decision includes the Court's findings of fact and conclusions of law.

The Debtor Linda Josephine Snyder ("Linda" or "Debtor") appeared and testified, represented by attorney Daniel S. Morgan ("Morgan") of Missoula.  Debtor also called realtor Tom Dauenhauer ("Dauenhauer"), whose employment by Debtor to sell her residence was approved by the Court on September 24, 2009, to testify.  Pruyn was represented by attorney Martin S. King ("King") of Missoula.  Pruyn's Exhibits ("Ex.") 1, 2, 3, 7, and 8 were admitted, as were Debtor's Ex. A and B.

## FACTS

Linda lives in a residence in the Rattlesnake area of Missoula which her parents built in the 1960's.  She moved in with them to take care of them, and when they passed away in 1992 Linda and her brother inherited the residence.  Linda borrowed money and mortgaged the residence to pay her brother cash for his interest.

Linda testified that she is an entrepreneur and has had her own businesses, but she recently suffered poor health for a year and a half, and now does yard work and odd jobs.

Linda attempted to sell her residence by herself by placing a "For Sale" sign in her yard and on the Craig's List website for a period of 24 months.  Dauenhauer testified that Linda tried

to sell the house for between $260,000 to $269,000.  She testified that one contractor offered her $258,000 for her home in 2008, but wanted her out immediately and she declined.  Otherwise she said she had offers but no signed buy/sell agreement.

Linda testified that she filed a prior bankruptcy case before a scheduled trustee sale.  She received a Chapter 7 discharge in Case No. 04-60956-7 on July 13, 2004.  Ex. 8.

Linda testified that she borrowed money from Dr. Pruyn as a last resort to stave off foreclosure.  Ex. 1 is the trust indenture note in the principal sum of $152,000 payable to Pruyn, dated January 19, 2007, secured by Ex. 2 – a trust indenture.  Linda defaulted on the note owed to Pruyn.  She testified that Dr. Pruyn gave her an extra year, but that she could not pay him because she injured her ankle and had a mental breakdown which prevented her from working or paying her property taxes.

Linda's unpaid property taxes for several years grew to approximately $9,000. Linda and Dauenhauer testified that Linda's residence was sold at tax sale in July 2007.

In February of 2009 Linda began borrowing from payday lenders and Title Cash for living expenses.  She testified that she eventually paid off those loans by settlement rather than continue to pay interest, which she testified worked out to 600% annual interest.

 Dr. Pruyn scheduled a trustee's sale for August 12, 2009.  Ex. 3, which was stopped by the instant bankruptcy filing.  Linda filed her Chapter 13 petition on August 8, 2009, and filed her Schedules and Plan on August 24, 2009.  Her Schedule A lists her residence at a value of $258,000, based on the offer she received from the contractor in 2008, securing claims totaling $192,871.23.  Schedule D lists a total of five mortgages against her residence, with Pruyn's mortgage listed as fourth mortgage in the amount of $164,423.  Ron Russell ("Russell") of Montana Mortgage is listed as having a fifth mortgage against the residence in the amount of

$7,033.87.  Linda testified that Russell was going to be a joint owner of her residence, but that he went out of business.  Two statutory tax liens are listed on Schedule D naming as lienholders Missoula County Treasurer ($6,817.87) and Mooring Tax Asset Group ($1,546.29).  Total secured claims against the residence on Schedule D are stated as $192,871.23.

Schedule F lists a total of $7,501.63 in unsecured nonpriority claims, including a claim of Missoula County Attorney NSF check division in the amount of $546, which Linda testified that she was required to make payments on every month notwithstanding the instant bankruptcy case. Schedule I lists Linda's monthly income from social security ($1,036.00), pension ($123.03), and AFDC Food Stamps ($200) for a total of $1,359.03.  Linda testified that she did not list income from renting out space in her residence or from gardening because she was not doing those things until the last couple of months, but that she intends to get back into the work force and earn additional income.

Schedule J lists expenses totaling $1,258.79, including homeowner's insurance of $85 per month and real property taxes of $297.40 per month.  Linda testified that she is eligible for an 80% reduction in her property taxes under an elderly low income person program through the Montana Department of Revenue ("DOR"), and that she has and will have no problem paying taxes and insurance.  Ex. A is a letter from the DOR corroborating her testimony.  Debtor's Form B22C concludes that Linda is a below median income debtor and the applicable commitment period for a plan is 3 years.

Debtor's Chapter 13 Plan filed August 24, 2009, proposes monthly payments in the sum of $100 for 36 months, and provides for the sale or refinance of her residence in 24 months and turnover of proceeds sufficient to pay allowed secured claims in full, and if the property does not sell or be refinanced before August 8, 2011, the Trustee may liquidate the property or convert the

4

case to Chapter 7.  Linda testified that she has not tried to refinance with traditional lenders since 2007 when her only application was turned down, but she has spoken with business people about refinancing.

Debtor's Plan estimates the total secured claims against Debtor's residence in the approximate amount of $200,000, and the market value at $258,000.  Linda testified that there is barely enough equity for the 24 month term to pay the secured claims and trustee fees, but that she is "very willing" to reduce her plan term to coincide with Dauenhauer's estimate of the time required for sale.  Linda testified that she is willing to reduce the "drop dead" date in her Plan to September 16, 2010, and that if her home does not sell by that date then the creditors can take it. She testified that she is current in plan payments and will have no problem making the $100 payment.  She is prepared to pay the property taxes and will redeem the tax sale certificate when her residence is sold.

Proofs of Claim were filed asserting secured claims by Mooring Tax Asset Group (Claim 4 – $2,457.96); Debora G. Poteet and Lara J. Dorman (Claim 6 – $11,896.27 and Claim 7 – $2,287.03); City of Missoula (Claim 10 – $2,025.10).  As yet Pruyn has not filed a Proof of Claim[2].

Pruyn filed its motion to modify stay on September 14, 2009, based upon 11 U.S.C. § 362(d)(1) and alleging that the note is due in the amount of $173,064.47 and accrues interest at the rate of $41.23 per diem.  Pruyn alleges the value of Debtor's residence is $258,000 according to Debtor's Schedules A and D, and that the property is encumbered by trust indentures and tax liens, and was sold at tax sale to Mooring.  Pruyn's motion and objection to confirmation allege that Debtor's petition and Plan were not filed in good faith because she filed her petition four

[2]The claims bar date is December 16, 2009.

5

days before the trustee's sale on non-judicial foreclosure by Pruyn, and that she lacks sufficient income to pay taxes or insurance on the residence. The Chapter 13 Trustee consented to Pruyn's motion to modify stay. The Debtor filed an objection to Pruyn's motion (Docket No. 21) contending that she has sufficient equity in the property and it is vital to her effective reorganization.

Poteet and Dorman filed objections to confirmation of Debtor's Plan alleging that it is not feasible in its proposed sale or refinancing as required by § 1325(a)(6), and does not satisfy § 1325(a)(5)(B). Pruyn filed objections repeating that the petition and Plan lack good faith and is not feasible, and violates § 1322(b)(2) by modifying the rights of Pruyn as holder of a secured claim. The Trustee objected to confirmation on the grounds the Plan is not feasible and the Debtor will not be able to make all payments due under the Plan or maintain her property in contemplation of the sale.

The Debtor filed an application to employ Dauenhauer on September 24, 2009, which was approved. Linda testified that Dauenhauer was the first real estate agent she has hired.

Dauenhauer testified that he performed a comparative market analysis on Linda's residence, and that the median price for homes in the Rattlesnake are in the range from $284,000 to $285,000. He testified that the average time on the market for Rattlesnake homes in the price range of $250,000 to $310,000 is 111 days, and that it is a desirable area with steady and above average market activity. Linda testified that all the homes around hers are on half acre lots and are valued at half a million dollars based on her attendance at open houses. She testified that having a spring and summer to sell her residence will be enough and that she is willing to amend her plan to sell her residence before September 16, 2010

Dauenhauer testified that he recommended a listing price for Linda's residence of

6

$275,000 because of deferred maintenance, and that Linda should expect an offer in the range of $250,000 to $260,000. On cross examination Dauenhauer described the deferred maintenance items as peeling paint, and a roof in a condition that an inspection will recommend repairs or replacement. He testified that the identified items would place the residence in "as is" condition of sale[3], and that Linda has not committed to repairing the roof, deck or paint.

The residence was listed on September 16, 2009, and the Dauenhauer testified that he has had five showings of the property and several telephone calls. Linda testified that she is actively listing her home for sale, and that her Plan to sell her property will pay all her debts in full. Under questioning by the Trustee Linda testified that she has not taken out any other loans, has no checking account or credit cards and only one savings account

## DISCUSSION

### I. Contentions of the Parties.

Pruyn's motion is filed based upon 11 U.S.C. § 362(d)(1) for "cause." Pruyn objects to confirmation because the Plan is not feasible as required under § 1325(a)(6), and Linda is unable to make the Plan payments, and cites *In re Bassett*, 413 B.R. 778 (Bankr. D. Mont. 2009), and that the Trustee's continued objection based on feasibility is entitled to significant weight.

Pruyn argues that Linda will not have the ability to redeem the residence from tax sale in July 2010, and that the automatic stay will not preclude the holder of the tax certificate from obtaining a tax deed after the redemption period expires. The Debtor disagrees and argues the stay applies.[4] Pruyn argues that the Plan violates § 1322(b)(2) by modifying its rights, even

---

[3]He testified that a developer would not care about deferred maintenance.

[4]This issue is not ripe, and has not been placed before the Court in a proper procedural manner at this time. The Court expects that if an act is attempted in violation of 11 U.S.C. § 362(a) to obtain possession or control of property of the estate, without first requesting and obtaining relief

though its note has fully matured and the Plan provides for payment in full, by delaying payment of property taxes when due.

Pruyn objects that Debtor's Plan is not filed in good faith as required under § 1325(a)(3) because Linda filed her petition on the even of a trustee's sale as in her prior case. *Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1224-25 (9th Cir. 1999). Pruyn argues that Linda delayed hiring a realtor until after it filed its motion to modify stay, and has filed two bankruptcy cases, which constitutes lack of good faith. Pruyn's brief does not point out any misrepresentation of facts in Debtor's Plan or instances where she unfairly manipulated the Code, or describe egregious behavior. *Leavitt*, 171 F.3d at 1224-25. Because the Plan is not confirmable, Pruyn argues, confirmation should be denied and the stay modified.

Linda argues that Pruyn's motion makes false allegations regarding her income and payment of taxes and insurance, which are contradicted by Schedules I and J. Linda contends that she is honest but unfortunate and seeks a fresh start and continuation of the stay to pay her creditors through her equity in her proposed amended Plan.

With respect to the tax deed, Linda argues that is a red herring, and that according to Mooring's Claim 4 she has until September 26, 2010, ten days after her new proposed "drop dead" date, to redeem the taxes. Claim 4 and attachment thereto state the date the debt was incurred was 09/26/2007. Further, Linda argues that Mooring must file a motion to modify stay before taking a tax deed, and notes that Mooring has not objected to confirmation.

Linda argues that she has filed her petition and Plan in good faith as shown by her shortening the sale and "drop dead" date by a year, and that lifting the stay would result in the loss of all her equity and leave her homeless and unable to pay other creditors. She argues that

from this Court, that it will be brought before the Court promptly.

there is no evidence of misrepresentation of facts in the petition or plan, no evidence of state court litigation, and that her two bankruptcy cases are not sufficient proof of lack of good faith. She contends that her Plan fully pays Pruyn's and all other secured claims in full, while adequately protecting them with a sufficient cushion based on the $258,000 undisputed value.

## II. Confirmation Standards.

It is well established law in this Circuit that for a bankruptcy court to confirm a plan, "each of the requirements of section 1325 *must be present* and the debtor has the burden of proving that each element has been met." *(Barnes v. Barnes) In re Barnes*, 32 F.3d 405, 407 (9th Cir. 1994); *In re Tuss*, 360 B.R. 684, 690 (Bankr. D. Mont. 2007); *Andrews v. Loheit (In re Andrews)*, 49 F.3d 1404, 1408 (9th Cir. 1995); *Chinichian v. Campolongo*, 784 F.2d 1440, 1443-44 (9th Cir.1986) (citing *In re Elkind*, 11 B.R. 473, 476 (Bankr.D.Colo.1981)) (emphasis added).  Section 1325(a)(1) requires confirmation of a plan if "the plan complies with the provisions of this chapter and with the other applicable provisions of this title."  Therefore, debtors have the burden of proof on all elements of confirmation.  *Meyer v. Hill*, *(In re Hill)*, 268 B.R. 548, 552 (9th Cir. BAP 2001).  The Chapter 13 Trustee has objected to confirmation of the Debtor's Plan, which is entitled to significant weight against the Debtor's burden of proof on confirmation.  On the other hand, in her brief the Debtor clearly has abandoned her original Plan and proposes an amended Plan with a shortened sale deadline and "drop dead" date ending September 16, 2010, and Linda testified that if she fails to sell her residence by that date the creditors can have it, which this Court interprets as the Debtor's commitment to vacate and surrender the property under the amended Plan.

Turning first to feasibility, the Court deems Debtor's concessions as decisive.  Based on the Debtor's admission the Court denies confirmation of Debtor's original Plan, Docket No. 9.

9

However, the Court finds no merit in the feasibility objections raised by Pruyn, Poteet and the Trustee. The only evidence in the record is that the Debtor is current on her monthly plan payments, that she will be able to make her monthly payments for the remaining plan term of less than one year. Pruyn's objection based on taxes and insurance is unsupported by any evidence and contradicted by Linda's testimony, by her Schedule J, and by her Ex. A showing a major reduction in her property tax rate under the DOR's Property Tax Assistance Program.

Section 1325(a)(6) requires that "the debtor will be able to make all payments under the plan and to comply with the plan." *In re Thomas*, 241 F.3d 959, 963 (8th Cir. Ark. 2001). The court in *Thomas* recognized that "drop dead" provisions are entitled to be considered by a bankruptcy court when evaluating a plan's prospects for success. 241 F.3d at 963.

Debtor's ability to make her monthly payment is undisputed by any competent evidence. Her ability to sell her home at below the median price range for Rattlesnake homes and within a shortened time period, which still exceeds the average days on market for Rattlesnake homes, is shown by Dauenhauer's testimony that also is uncontroverted by any competent evidence. Pruyn did not call any witness, and did not dispute or impeach Dauenhauer on cross examination. The Court finds that the Debtor's proposed amended Plan shortening the "drop dead" and sale date would be feasible.

Poteet and Dorman object to confirmation contending the Debtors' Plan fails the requirements of § 1325(a)(5)(B)(ii) which provides that, with respect to each allowed secured claim provided for by the plan, "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim." Under this section a Chapter 13 plan must provide for payments to secured creditors totaling no less than the present value of the secured creditors' claims. *In re Hungerford*, 19

10

Mont. B.R. 103, 111 (Bankr. D. Mont. 2001).  The Ninth Circuit Bankruptcy Appellate Panel

noted in *Trejos v. VW Credit, Inc., et al. (In re Trejos)*, 374 B.R. 210, 220 n.9 (9th Cir. BAP

2007):

> The text of § 1325(a)(5)(B)(ii) did not change under 9 BAPCPA[5].  The phrase "as
> of the effective date" previously was recognized to require an interest component
> be paid so as to ensure that the creditor receive the present value of its claim.  The
> Supreme Court addressed the calculation of present value interest under §
> 1325(a)(5)(B)(ii) in *Till v. SCS Credit Corp.*, 541 U.S. 465, 124 S.Ct. 1951, 158
> L.Ed.2d 787 (2004), and set "prime-plus" as the proper method for determining
> the interest rate that would provide present value.  Most courts that have
> considered the issue have held that, since § 1325(a)(5)(B)(ii) remains unchanged
> under BAPCPA, *Till* remains valid under BAPCPA.  Because the issue is not
> before us in this appeal, we save it for another day.

The Debtor's Plan in the instant case does not propose a "cram down" of interest rate, and

does not seek to cram down the valuation of the creditors' security under 11 U.S.C. § 506(a) and

§ 1325(a)(5)(B)(ii) as discussed in *Hungerford*, 19 Mont. B.R. at 111-16.  Instead, the Plan

provides at paragraph 1 that Pruyn, Poteet and Dorman and allowed secured claims will be paid

in full, and the new "drop dead" date is September 16, 2010.  The Debtor did not have the

advantage of the creditors' filed Proofs of Claim, and in Pruyn's case still does not[6], to provide

for payment with greater detail, but Debtor will be allowed to submit an amended Plan consistent

with her brief and Linda's testimony that she will vacate and surrender the residence if not sold

by the "drop dead" date, to provide greater detail on the treatment of the allowed claims under §

1325(a)(5)(B)(ii).

Section 1322(b)(8) allows a plan to be partially funded through the sale of property of the

---

[5]Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (Pub.L. 109-8)
("BAPCPA").

[6]If Pruyn fails timely to file a Proof of Claim the Debtor or Trustee may file a proof of claim
under F.R.B.P. Rule 3004.

estate or property of a debtor, but issues of good faith, feasibility and adequate protection arise when a plan proposes only token monthly payments to the secured creditor. *In re Lindsey*, 183 B.R. 624, 627 (Bankr. D. Idaho 1995). The Debtors' Plan in the instant case proposes $100 monthly plan payments, and nothing to the secured claims until the sale, so the Debtor has the burden to produce evidence as to past marketing efforts, the state of the market for the subject asset, current sale prospects, the existence and maintenance of the market for the subject asset, the existence and maintenance of any equity cushion, and all other circumstances that bear on whether the creditor will see its way out of the case financially whole. *Lindsey*, 183 B.R. at 627, quoting *In re Newton*, 161 B.R. 207, 217-18 (Bankr. D. Minn. 1993). The Court finds that Linda has satisfied her burden of proof under all these factors by her own testimony and that of Dauenhauer.

*In re Gavia*, 24 B.R. 573, 574 (9th Cir. BAP 1982), the debtors had a limited equity of only $8,000 to pay all their creditors, whose debt almost equaled their equity and which they proposed to pay in full, and no evidence existed that Gavias had contacted a realtor, placed the home on the market or had any contact with any potential purchasers. 24 B.R. at 574. By contrast in the instant case the Debtor has listed her residence and employed a realtor, Dauenhauer, and showings and contacts have occurred with potential purchasers as shown by the uncontroverted testimony.

Dauenhauer testified that the Rattlesnake market for homes is steady and improving. No evidence exists in the record to the contrary, and given the Debtor's proposed shortened "drop dead" date and prospective purchasers' interest that the evidence shows exists in the property in an improving market the Court finds that the Debtor is satisfying her burden of proof.

On the issue of equity cushion, Pruyn asserted the Debtor's scheduled value of $258,000

12

for the residence in its motion, was inadequate protection for its claim as of September 14, 2009, in the amount of $173,064.47 with per diem interest of $41.23.  From September 14, 2009, to September 26, 2010, the Court finds that another 367 days of interest would accrue in the total amount of $15,131.41, increasing Pruyn's allowed claim by the proposed shortened "drop dead" date to $188,195.88.  Other secured claims filed according to the claims on file are Mooring ($2,457.96), Poteet/Dorman ($11,896.27 and $2,287.03), City of Missoula ($2,025.10), and Montana Mortgage's scheduled claim of $7,033.87.  The total of the other secured claims is $25,700.23, not including interest,[7] which combined with Pruyn's claim totals $213,896.11. Subtracting that amount from $258,000 leaves an equity cushion of $44,103.89 to pay all secured claims in full including interest, which the Court finds constitutes adequate protection.

Pruyn objects to confirmation on the grounds the Debtor's Plan violates 11 U.S.C. § 1322(b)(2) by modifying the rights of holders of secured claims which are secured only by a security interest in the Debtor's principal residence, because of the delay in paying property taxes.  The Debtor's Plan provides for a "cure-by-sale" to Pruyn and other secured creditors, which this Court decided may satisfy the confirmation requirements of 11 U.S.C. § 1322(b)(3), (b)(5)[8] & (c)(1)[9].  *In re Siegfried*, 16 Mont. B.R. 289, 301 (Bankr. D. Mont. 1997).  The United States District Court for the District of Montana has held that a debtor's default may be cured by

---

[7] Since Pruyn's claim is almost seven times the total amount of the other claims it is not necessary to compute the accrued interest on the other claims precisely, because the equity cushion shown by the evidence is so large.

[8] "[A] plan may provide for the curing of a default within a reasonable time. § 1322(b)(5)." *In re Dunn*, 399 B.R. 909, 911 (Bankr. W.D. Wash. 2009).

[9] Section 1322(c)(1) provides: "Notwithstanding subsection (b)(2) and applicable nonbankruptcy law – (1) a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) or subsection (b) until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law".

13

sale of a residence as in *Siegfried*.  *In re Murphy-Reiner*, 19 Mont. B.R. 141, 143-44 (D. Mont. 2001).

As in *Siegfried*, the Debtor's Plan provides for the payment in full of all allowed secured claims, including interest, through the sale of their security.  *Siegfried*, 16 Mont. B.R. at 302. The Debtor's proposed shortened "drop dead" date is 2 years shorter than the 3 year term in *Siegfried*, while her $100 plan payment is less than in *Siegfried*.  *Id.* at 291, 302.  During the term of the Plan the record shows that Pruyn, Poteet/Dorman and other secured creditors are provided adequate protection through a substantial equity cushion over and above the allowed secured claims by the value of the Debtor's residence.  Finally, as in *Siegfried* the Debtor has applied for and was granted approval of employment of a realtor.  *Id.* at 301.

Based upon the above, this Court preliminarily concludes that the Debtor's proposed amended Plan satisfies the requirements set forth in *Siegfried* and *Murphy-Reiner* for cure-by-sale of Debtor's defaults under their loans from Pruyn, Poteet/Dorman and other secured creditors.

Lastly Pruyn objects that Debtor's petition and Plan is not proposed in good faith. Section 1325(a)(3) requires that "the plan has been proposed in good faith and not by any means forbidden by law."  To determine whether a plan has been proposed in bad faith the Court must review the "totality of the circumstances".  *Leavitt*, 171 F.3d at 1224-25; *Eisen v. Curry (In re Eisen)*, 14 F.3d 469, 470 (9th Cir. 1994); *In re Gress*, 257 B.R. 563, 567, 18 Mont. B.R. 30, 34 (Bankr. D. Mont. 2000).  In *Leavitt*, the Ninth Circuit held that in determining whether a Chapter 13 plan is proposed in good faith, a bankruptcy court should consider (1) whether debtors misrepresented facts in their plan or unfairly manipulated the Code, (2) the debtors' history of filings and dismissals, (3) whether the debtors intended to defeat state court litigation, and (4)

14

whether egregious behavior is present. *Leavitt*, 171 F.3d at 1224-25 (9th Cir. 1999); *Drummond v. Cavanagh (In re Cavanagh)*, 250 B.R. 107, 114 (9th Cir. BAP 2000).

Pruyn argues that Debtor's case and Plan are not filed in good faith, but the only evidence in the record supporting Pruyn's argument is Linda's filing of two bankruptcy cases. No evidence exists in the record of misrepresentations of facts in her plan or unfair manipulation of the Code, state court litigation which the Debtor intended to defeat when her Plan proposed to pay allowed secured claims in full, and nothing which suggests egregious behavior is present. In sum, after reviewing the totality of the circumstances the Court finds and concludes that the Debtor has satisfied her burden under § 1325(a)(3) of showing that she proposed her Plan, and her proposed amended Plan, in good faith and not by any means forbidden by law.

### III. Pruyn's Motion to Modify Stay.

Under 11 U.S.C. § 362(g), a creditor has the burden of proving that a debtor does not have equity in property, while the debtor has the burden of proof on all other issues to show that the stay should not be modified. *In re Mittlestadt*, 20 Mont. B.R. 46, 52 (Bankr. D. Mont. 2002); *In re Hungerford*, 19 Mont. B.R. 103, 133-34 (Bankr. D. Mont. 2001); *In re National Environmental Waste* Corp., 191 B.R. 832, 836 (Bankr. C.D. Cal. 1996), *aff'd*, 129 F.3d 1052 (9th Cir. 1997); *In re Syed*, 238 B.R. 126, 132 (Bankr. N.D. Ill. 1999); *In re Sauk Steel Co., Inc.*, 133 B.R. 431, 436 (Bankr.N.D.Ill.1991); 11 U.S.C. § 362(g)(2). Pruyn has completely failed to show that Linda does not have equity in her residence.

> Under 11 U.S.C. § 362(a), "[a] bankruptcy filing imposes an automatic stay of all litigation against the debtor." *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1166 (9th Cir. 1990) (citing 11 U.S.C. § 362(a)), except in those cases specifically enumerated in § 362(b). The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives debtors a breathing spell from creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits debtors to attempt a repayment

or reorganization plan, or simply to be relieved of the financial pressures that drove them into bankruptcy.  S.Rep. No. 989, 95th Cong., 2d Sess. 54-55 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5840-41.

*In re Mittlestadt*, 20 Mont. B.R. at 51 (quoting *In re Westco Energy, Inc.*, 18 Mont. B.R. 199, 211-12 (Bankr. D. Mont. 2000)).

Pruyn's motion to modify stay is based upon § 362(d)(1), which allows for the granting of relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property of such party in interest[.]"   This Court explained the standard for modifying the stay for "cause" under § 362(d)(1) in *Westco*:

> Section 362(d), however, provides that, "[on request of a party in interest and after notice and a hearing, the court shall grant relief from the [automatic] stay" in three instances.  The subsection relevant to these proceedings is § 362(d)(1), which allows for the granting of relief from the automatic stay "for cause".  What constitutes cause for purposes of § 362(d) "has no clear definition and is determined on a case-by-case basis."  *Tucson Estates*, 912 F.2d at 1166.  *See also Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In the Matter of Little Creek Dev. Co.)*, 779 F.2d 1068, 1072 (5th Cir. 1986) (Relief from the automatic stay may "be granted 'for cause,' a term not defined in the statute so as to afford flexibility to the bankruptcy courts.").

*Westco*, 18 Mont. B.R. at 211-12.

Once a party seeking relief first establishes a prima facie case that cause exists for relief under § 362(d)(1), the burden shifts to the Debtor to show that relief from the stay is not warranted.  *In re Gould*, 401 B.R. 415, 426 (9th Cir. BAP 2009); *Duvar Apt., Inc. v. FDIC, (In re Duvar Apt., Inc.)*, 205 B.R. 196, 200 (9th Cir. BAP 1996).

Section 362 vests this Court with wide latitude in granting appropriate relief from the automatic stay, and a decision to lift the automatic stay is within a bankruptcy court's discretion, and subject to review for an abuse of discretion.  *In re Delaney-Morin*, 304 B.R. 365, 369-70 (9th Cir. BAP 2003); *In re Leisure Corp.*, 234 B.R. 916, 920 (9th Cir. BAP 1999); *In re Plummer*, 20

Mont. B.R. 468, 477-78 (Bankr. D. Mont. 2003); *Mataya v. Kissinger (In re Kissinger)*, 72 F.3d 107, 108-109 (9th Cir. 1995).

Pruyn argues that the unpaid property taxes and Linda's two bankruptcy petitions filed on the eve of trustee's sales constitutes cause to grant its motion.  The Court disagrees.  Her proposed amended Plan provides for curing of the unpaid property taxes before the deadline for redemption of taxes, and provides adequate protection to Pruyn.

Lack of adequate protection is one example of cause for relief from stay.  *In re Ellis*, 60 B.R. 432, 435 (9th Cir. BAP 1985); *In re Avila,* 311 B.R. 81, 83 (Bankr. N.D. Cal. 2004).  An equity cushion may provide adequate protection even though not a single mortgage payment has been made.  *Avila,* 311 B.R. at 83; *In re Mellor*, 734 F.2d 1396, 1400 (9th Cir.1984).  In *Avila* the court found the mortgagee was adequately protected by an equity cushion of 40%.  *Avila*, 311 B.R. at 83.  The court noted that "[w]here a creditor is adequately protected by a large equity cushion, the debtor would suffer a substantial loss in the event of foreclosure, and no economic harm to the creditor would result, relief from stay should not automatically follow a default in payment."  *Avila,* 311 B.R. at 84; *see In re McCollum*, 76 B.R. 797, 799 (Bankr. D. Or.1987).  In the instant case the evidence shows that Pruyn is protected by an equity cushion, not including interest on other secured claims, of $44,103.89.  More importantly, the evidence shows that Linda would suffer substantial loss in the event the Court granted relief from the stay, and no economic harm will result to Pruyn under Linda's proposed amended Plan.

The Court finds and concludes that the Debtor satisfied her burden of proof to show that relief from the stay should not be granted, and the Court exercises its broad discretion and denies Pruyn's motion to modify stay.  *Kissinger*, 72 F.3d at 108-109.  Based on Linda's testimony that under her amended Plan she will surrender her residence if it is not sold by the proposed

shortened "drop dead" date, the Court expects Debtor's amended Plan to reflect that commitment, and any motion to modify stay by Pruyn if the residence is not sold by the "drop dead" date will be considered by this Court on an expedited timetable.

## CONCLUSIONS OF LAW

1.  This Court has original and exclusive jurisdiction over this Chapter 11 bankruptcy case under 28 U.S.C. § 1334(a).

2.  Pruyn's motion to modify stay is a core proceeding under 28 U.S.C. § 157(b)(2)(G). Confirmation of Debtor's Plan is a core proceeding under 28 U.S.C. § 157(b)(2)(L).

3.  By Debtor's admission her original Plan (Docket No. 9) is not confirmable under 11 U.S.C. § 1325.

4.  Debtor's proposed amended Plan with the "drop dead" date shortened to September 16, 2010, and Debtor's testimony that if she fails to sell by that date she will vacate and surrender her residence, satisfies the "good faith" and feasibility requirements of § 1325.

5.  Pruyn and other secured creditors are protected by a substantial equity cushion shown by the evidence existing in Debtor's residence.

6.  The Debtor satisfied her burden of proof under 11 U.S.C. §§ 362(d)(1) to show that relief from the automatic stay should not be granted.

**IT IS ORDERED** a separate Order shall be entered in conformity with the above: (1) denying confirmation of Debtor's Chapter 13 Plan filed August 24, 2009 (Docket No. 9); (2) granting the Debtor 10 days to file an amended Plan consistent with her brief and testimony shortening the "drop dead" date for sale of her residence to September 16, 2010, and providing that if the residence is not sold by that date she will vacate and surrender possession of the residence; and (3) denying Pruyn's motion to modify stay, filed September 14, 2009 (Docket No.

18

14), with leave to refile.

DATED this 13th day of November, 2009.

BY THE COURT

*Ralph B Kirscher*

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana